# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                 File No.  1:12-CR-130

v.

                                 HON. ROBERT HOLMES BELL

THOMAS L. WRIGHT,

       Defendant.

_____/

## O P I N I O N

Defendant Thomas L. Wright has been charged in a seven-count indictment with five counts of sexual exploitation of a child in violation of 18 U.S.C. § 2251 (Counts 1-5), one count of transportation of images of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252 (Count 6), and one count of possession of child pornography in violation of 18 U.S.C. § 2252A (Count 7).  (Dkt. No. 20, Superseding Indictment.)  The Court granted the government's oral motion to amend the superseding indictment to switch the file names that had been transposed in Counts 4 & 5 (Count 4 should reflect the file name in Count 5, 000000001021d5b6.mpg, and Count 5 should reflect the file name in Count 4, 000000010346056.mpg).  (Dkt. No. 40.)  Defendant waived his right to a jury trial and consented to a trial by the Court.  (Dkt. No. 43, Order Approving Waiver.)  A non-jury trial was held on December 17, 2012, at which time the Court heard testimony from government witnesses Special Agent Michael George and Special Agent Blair Babcock of the

Department of Homeland Security – Homeland Security Investigations (HSI).  This opinion contains the Court's findings of fact and conclusions of law in accordance with Fed. R. Crim. P. 23(c).

## I. Findings of Fact

In March 2011, Special Agent Michael George received an investigative lead from Texas regarding a child pornography investigation.  Pursuant to that lead, on March 24, 2011, Agent George and HSI Special Agent Timothy Kruithoff interviewed Defendant Thomas Lee Wright at his home in Bangor, Michigan.  During the interview Wright spoke about a boy, J.S., who had been coming to cut grass and perform chores at Defendant's house and at his equestrian business across the street.  Defendant advised that he began a sexual relationship with J.S. when J.S. was 16 and Defendant was 58.  J.S. was born on May 14, 1992.  (Ex. 12, Stip.)  At the time of the interview, J.S. was 18 years old, and he was still in a relationship with Defendant.  Defendant admitted that he had taken nude photographs of J.S. from the time J.S. was 16 years old.  Defendant advised that the images were on his computer and thumb drives.

Defendant gave the agents written consent to perform a forensic preview of his computer onsite (Ex. 7), and written consent for a full forensic examination of his computer and electronic equipment, including an Apple Mac Pro desktop computer, Apple laptop computer, three thumb drives, a Fuji digital camera, a digital video camera, an external hard drive, and two camera storage devices (SD-type cards) (Ex. 8).  The Apple Mac Pro desktop

computer, the Western Digital 250 GB hard drive, Seagate 1 TB hard drive, Seagate 500 GB hard drive, Seagate 2 TB hard drive, San Disk Cruzer micro 512MB, San Disk Cruzer micro 512MB, and the San Disk Cruzer mini 256 MB were manufactured outside of the State of Michigan. (Ex. 6, Stip.)

Special Agent Blair Babcock conducted a forensic examination of the items seized from Defendant's office. The forensic examination revealed thousands of images of J.S. on Defendant's computers and electronic storage devices. The images include nude photographs, non-nude photographs, photographs of J.S. when he was over the age of 18, and many duplicate images. The only nude images of J.S. before he was 18 years old were in files created between March 3 and March 9, 2009.

In early March 2009, Defendant took J.S. to Florida for a week. Evidence of the trip is confirmed by Defendant's February 24, 2009, Visa credit card statement showing his purchase of two roundtrip airline tickets to Orlando on February 1, 2009, a payment to the Buena Vista Palace hotel on February 3, 2009, and a payment to Walt Disney World Tickets on February 3, 2009 (Ex. 14); by Defendant's March 24, 2009, Visa credit card statement showing multiple charges in the Orlando, Florida metropolitan area from March 4, 2009, to March 10, 2009, including a $939.07 charge at the Buena Vista Palace (Ex. 14A); by the Buena Vista Palace hotel invoice (Ex. 15); and by the hotel card settlement data (Ex. 16). The trip is also confirmed by Defendant's emails both before and after the trip. (Exs. 10A, 10B, 10C, 10D.)

Defendant's emails reveal that he was aware that J.S. came from a home with minimal resources and opportunities. (Exs. 10A, 10B, 10C, 10E.) Prior to the trip, Defendant took J.S. shopping for new clothes for the trip. (Ex. 10B). One of the purposes of the trip was to see Defendant's father before he died. (Ex. 10D.) Defendant was also looking forward to taking J.S. on a "real adventure" because it was "his first trip anywhere." (Exs. 10A, 10C.)

The nude photographs of J.S. when he was under the age of 18 were found on the Cruzer 256MB thumb drive. The EXIF[1] data from the thumb drive indicated that the images were created on March 4, 6, and 9, 2009, during the same time period that Defendant and J.S. were in Florida. In March 2009, J.S. was under eighteen years of age. The images from March 4 show J.S. naked in the shower and on a chair with his genitals exposed, naked in the shower spreading his buttocks, and on the bed with his pants pulled down and his genitals exposed. (Ex. 9B.) The images from March 6 show J.S. with his robe open and his genitals exposed, naked on his stomach on the bed, and standing naked with Defendant in the hotel room. (Ex. 9C.) The images from March 9 are 4 pictures of J.S. naked in an outdoor pool or hot tub, and 3 pictures of J.S. and Defendant, both naked at the outdoor pool or hot tub. (Ex. 9D.)

None of these nude photos of J.S. were found on the hard drive of either computer, nor were they found on the camera memory cards that were removed from Defendant's

---

[1]EXIF stands for Exchangeable Image File, a format that is used for storing interchange information in digital photography image files.

office.  The Fuji FinePix camera seized from Defendant's office was the same make and model as the camera used to take the Florida pictures.  However, because the serial number of the camera was not embedded in the EXIF data, Agent Babcock could not identify the camera as the camera used to take the Florida pictures.

On July 8, 2009, Defendant wrote in an email that he was aware that J.S. was jacking off in front of the computer in the office.  Defendant also admitted in the email that he had checked on the computer history to see what sites J.S. was looking at.

On July 8, 2009, Defendant wrote the following email:

> As far as here at home since the trip nothing is different.  Before the trip he walked in the bathroom one night and caught me jacking off in the shower. And I have caught him jacking also.  He will come in and set [sic] here in the office looking at porn sites on the computer and jack off.  I look at the history and see what he looks at, all gay sites of course.

(Ex. 10D.)

The government introduced two videos from Defendant's Mac Pro Tower hard drive, HDD 4.  The videos were placed on the hard drive via EyeTV software that had been installed on the hard drive of the computer.  The videos appear to have been taken from a web cam or surveillance camera located in an upper corner of the office.  The videos taken on July 30, 2009, and August 13, 2009, show J.S. masturbating in front of the computer. (Exs. 11A-11D.)  J.S. does not appear to be aware that he is being recorded.  The video shows him looking through drawers, cupboards and shelves in the office.  The camera angle showed the entire room, but the center of the picture was focused on the computer chair.

Agent George was not aware of the existence of a surveillance camera when he seized the computer equipment from the office. No evidence was introduced regarding the camera used to make the videos. There was no evidence of the number or model of camera, who manufactured it, or where it was manufactured. Agent Babcock testified that the files were captured with EyeTV software, and were saved under the file structure for EyeTV. The video camera was not motion-activated, but Agent Babcock was unable to determine whether the camera was activated by a timer or whether the user had to activate it manually. Agent Babcock also did not know how the video was transferred from the camera to the harddrive of the computer, except that the EyeTV software was used.

Only six surveillance videos were found on Defendant's computer. All of the videos featured J.S. The two videos that were introduced were from July 30, and August 13, 2009, when J.S. was under 18 years of age. Two of the other four videos were of J.S. masturbating when he was over the age of 18, and the remaining two videos were not sexually oriented.

## II. Conclusions of Law

The government is required to prosecute an offense in a district where the offense was committed. Fed. R. Crim. P. 18. Where a crime involves transportation in interstate commerce, venue is proper in any district in which the offense was started, continued, or completed. 18 U.S.C. § 3237(a). Defendant resides in Bangor, in the Western District of Michigan, and the alleged offenses were started or completed at his residence. Accordingly, venue for all of the counts is proper in this Court.

**A. Sexual Exploitation, Counts 1, 2, 3**

Defendant is charged in Counts 1-3 with sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a). These three counts charge that on March 4, 6, and 9, 2009, Defendant used J.S. to engage in sexually explicit conduct, including masturbation and the lascivious exhibition of his pubic area, to produce digital images of the sexually explicit conduct, and transported the images from Florida to Michigan. Each count identifies seven specific images for the particular day involved.

Section 2251(a) provides in relevant part:

(a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e), . . . if such visual depiction has actually been transported . . . in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a).

In order for Defendant to be found guilty of Sexual Exploitation of a Minor as charged in Counts 1-3, the government was required to prove each of the following elements beyond a reasonable doubt:

(1) at the time alleged in the indictment, J.S. was under the age of 18 years;

(2) the defendant knowingly used, persuaded, induced or enticed J.S. to engage in sexually explicit conduct;

(3) the defendant acted with the purpose of producing a visual depiction of such conduct; and

(4) the visual depiction was actually transported across state lines or in foreign commerce.

*Eighth Circuit Model Jury Instructions*, § 6.18.2251(a). "Visual depiction" is defined to include undeveloped film and video tape, and data stored on a computer disk or by any other electronic means that can be converted into a visual image. 18 U.S.C. § 2256(5).

1. <u>Under 18</u>

The first element requires proof that at the time alleged in the indictment, J.S. was under the age of 18 years. Counts 1, 2, and 3 charge activities on March 4, 6, and 9, 2009. The 21 images that are the subject of Counts 1, 2, and 3 were all found on the San Disk Cruzer mini 256MB that was recovered from Defendant's office during the consent search. (Ex. 9A-9D). Based upon the file storage information (the EXIF data) on the thumb drive, Defendant's emails regarding the Florida trip, the images themselves, and the government's video of the hotel room, the Court concludes that the images identified in Counts 1, 2 and 3 were taken on or about March 4, 6, and 9, 2009, while Defendant and J.S. were in Florida.

In March 2009, when the images identified in Counts 1, 2 and 3 were made, J.S. was 16 years old. J.S., at age 16, was old enough to consent to a sexual relationship under Michigan law,[2] but not under Florida law.[3] In any event he was a minor for purposes of

---

[2]Michigan law provides:

A person who accosts, entices, or solicits a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age with the intent to induce or force that child or individual to commit an immoral act, to submit to an act of sexual intercourse or an act

(continued...)

§ 2251(a). *See United States v. Freeman*, 808 F.2d 1290, 1292 (8th Cir. 1987) (rejecting the argument that § 2251(a) is unconstitutional because it defines "minor" as one under eighteen years of age, whereas state law defines "minor" as one under sixteen years of age); *United States v. Ortiz-Graulau*, 397 F. Supp. 2d 345, 348 (D.P.R. 2005) (holding that the fact that the defendant could have a sexual relationship with a fourteen-year old female without violating Puerto Rico criminal law did not preclude his prosecution under federal law for the production and possession of sexually explicit photographs of the fourteen-year-old female).

2. Used

The second element requires proof that Defendant knowingly used, persuaded,

---

[2](...continued)
of gross indecency, or to any other act of depravity or delinquency, or who encourages a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age to engage in any of those acts is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $4,000.00, or both.

Mich. Comp. Laws § 750.145a.

[3]Florida law provides:

A person 24 years of age or older who engages in sexual activity with a person 16 or 17 years of age commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. As used in this section, "sexual activity" means oral, anal, or vaginal penetration by, or union with, the sexual organ of another; however, sexual activity does not include an act done for a bona fide medical purpose.

Fla. Stat. Ann. § 794.05(1).

induced or enticed J.S. to engage in sexually explicit conduct. The Sixth Circuit has not addressed what proof is required to show that a defendant used, persuaded, induced, or enticed, a minor for purposes of 18 U.S.C. § 2251(a).

Defendant contends that sexual exploitation of a minor under § 2251(a) "requires proof of active or coercive conduct by a defendant upon a minor[.]" *United States v. Overton*, 573 F.3d 679, 692 (9th Cir. 2009). According to Defendant, the statute requires that the defendant did something to cause the minor to engage in sexually explicit conduct and that the defendant did so with the specific intent to produce a visual depiction of that conduct. Defendant contends that there is no evidence about the circumstances under which the Florida pictures were taken – the purpose for taking the photos, who came up with the idea, who decided on the poses, who took which photographs, what camera was used, and whether features such as remote or time-delayed mechanisms were used. Defendant notes that the government failed to introduce other nude photos taken on the Florida trip that were of a playful or jovial nature, suggesting a lack of coercion.

The Ninth Circuit's discussion of the requirement of proof of active or coercive conduct under § 2251(a) in *Overton* arose in the context of a double jeopardy discussion. The court determined that § 2251(a) and § 2251(b) constitute separate offenses because "§ 2251(a) requires proof of active or coercive conduct by a defendant upon a minor, whereas § 2251(b) relates only to knowledge (by a person with custodial control)." *Id.* at 692. The Ninth Circuit did not discuss the nature of the evidence would be required to show "active or coercive conduct."

"There is undoubtedly an active component to the notion of 'use.'" *United States v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996). However, the Second Circuit held in *Sirois* that the "use" component is "fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography." *Id.* "[W]e believe that the meaning of 'use' in § 2251(a) is within the typical juror's everyday understanding of the word." *Id.* Most of the cases that have considered the proofs required for a conviction under § 2251(a) have followed *Sirois*'s holding that the "use" component of § 2251(a) is satisfied if a child is photographed in order to create pornography. For example, in *United States v. Fadl*, 498 F.3d 862 (8th Cir. 2007), the defendant argued that he did not "use" a minor to engage in sexual conduct because "he had only filmed the minors and did not initiate or solicit their sexual conduct." *Id.* at 866. The Eighth Circuit found this argument unpersuasive as it agreed with the Second Circuit that the "use" component "is fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography." *Id.* (quoting *Sirois*, 87 F.3d at 41); *see also United States v. Engle*, 676 F.3d 405, 419 n.9 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 179, 184 L. Ed. 2d 90 (2012); *United States v. McCloud*, 590 F.3d 560, 566 (8th Cir. 2009); *United States v. Ritter*, No. 11-CR-40037, 2012 WL 1965404, at *2 (D. Mass. May 30, 2012); *United States v. Helton*, No. CR-07-70-T, 2007 WL 1674196, at *5 (W.D. Okla. June 7, 2007). The Eighth Circuit Model Jury Instructions specifically provide that "A person is 'used' if they are photographed or videotaped." Eighth Circuit Model Jury Instructions § 6.18.2251(a).

Defendant notes that nothing about the images suggests that J.S. was unduly influenced or unwilling as a subject of the photographs. The fact that the minor was a willing participant does not negate a finding of "use." "Congress may legitimately conclude that even a willing or deceitful minor is entitled to governmental protection from 'self-destructive decisions' that would expose him or her to the harms of child pornography." *United States v. Fletcher*, 634 F.3d 395, 403 (7th Cir. 2011) (quoting *United States v. Malloy*, 568 F.3d 166, 175 (4th Cir. 2009)); *see also Ritter*, 2012 WL 1965404, at *2 (rejecting argument that evidence of "whether he prompted or coerced the minor to perform sexual acts on Stickcam, or whether she 'showed' of her own free will" would be exculpatory).

In *United States v. Ortiz-Graulau*, 526 F.3d 16, 18-19 (1st Cir. 2008), the First Circuit avoided ruling on whether the term "use" in § 2251(a) could be satisfied by something less than instigation because it found that "[g]iven the difference in ages – 38 versus 14 – and the fact that Ortiz participated in some of the sexual contact and admitted to taking the photographs (or at least many of them), the jury could reasonably infer that it was Ortiz who instigated at least some of the conduct[.]" *Id.* at 18-19. Accordingly, even if "use" requires something more than taking a photograph, the "use" requirement has been met in this case because, given the age difference between Defendant and J.S. – 58 versus 16 – and the fact that Defendant was in some of the photographs and admitted to taking nude photographs of J.S. when he was under 18, the Court can infer that Defendant instigated at least some of the conduct that was the subject of the photographs in Counts 1, 2, and 3.

In order to meet the "use" requirement, the defendant must have photographed the minor engaging in sexually explicit conduct. "Sexually explicit conduct" is defined to include "masturbation" and "the lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A). Congress has not defined the term "lascivious," but the Sixth Circuit considers the following six factors relevant in determining whether a depiction is "lascivious":

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> 4) whether the child is fully or partially clothed, or nude;
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Daniels*, 653 F.3d 399, 407 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1069 (2012) (quoting *United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009)). "[T]his list is not exhaustive, and an image need not satisfy every factor to be deemed lascivious." *United States v. Campbell*, 81 F. App'x 532, 536 (6th Cir. 2003) (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)). In determining whether the visual depiction is intended to elicit a sexual response in the viewer, the Court may consider the context in which the images were taken, such as "(1) where, when, and under what circumstances the photographs were taken, (2) the presence of other images of the same victim(s) taken at or around the

same time, and (3) any statements a defendant made about the images." *Brown*, 579 F.3d at 683-84 (footnote omitted). The Court may not, however, consider "factors not directly related to the circumstances surrounding the taking of the images, such as past bad acts of the defendant, the defendant's possession of other pornography (pornography of another type or of other victims), and other generalized facts that would relate only to the general 'unseemliness' of the defendant." *Id.* at 684.

Applying these factors, the Court concludes that all of the images at issue in Counts 1, 2, and 3 as shown in Exhibits 9B, 9C, 9D, are visual depictions of J.S. engaged in sexually explicit conduct. In all of the pictures, J.S. is nude or partially clothed, and the focal point of the images is on his genitalia. In addition, most of the images suggest sexual coyness, show or suggest masturbation, and are designed to elicit a sexual response in the viewer.

The Court is satisfied that the government has proved the second element of use beyond a reasonable doubt.

3. With the Purpose of Producing

The third element requires proof that Defendant acted with the purpose of producing a visual depiction of J.S. engaging in sexually explicit conduct.

The EXIF data does not indicate whether a timer or a remote control device was used to take any of the photographs. Although there is no direct evidence that Defendant took the photographs, the Court finds sufficient evidence that Defendant actively participated in the creation of the photographs. The pictures were taken in Defendant's hotel room during a trip

14

arranged by Defendant; they were taken on a camera that is consistent with the camera owned by Defendant; the images were found on a thumb drive in Defendant's office; Defendant admitted taking nude photographs of J.S. when J.S. was under 18; and the only nude images of J.S. that were found were those taken during the Florida trip.

The statute requires that "the – or at least a – 'purpose' of the defendant must be to foster sexually explicit conduct by a minor in order to make a visual depiction of it." *Ortiz-Grulau*, 526 F.3d at 19. "For the purpose of" means that the defendant acted with the specific intent of creating visual depictions of sexually explicit conduct. *United States v. Esch*, 832 F.2d 531, 536 (10th Cir. 1987). This requirement implies that "the defendant must know the character and content of the visual depiction. Otherwise how could the defendant purposefully make a visual depiction of sexually explicit conduct." *United States v. Reedy*, 632 F. Supp. 1415, 1422 (W.D. Okla. 1986).

"Producing" is defined to mean "producing, directing, manufacturing, issuing, publishing, or advertising." 18 U.S.C. § 2256. The definition's list of terms shows that Congress did not intend a technical definition of "produced." *United States v. Poulin*, 631 F.3d 17, 22 (1st Cir. 2011). "Congress intended to retain a non-technical definition of the term 'producing' (that is, in the sense of creating or making), but also sought to expand its scope to include activities that may not be generally considered to fall within the typical meaning of the term." *Fadl*, 498 F.3d at 867. The list of terms in the definition "reflects Congress's intention to enact a broad definition of 'producing' that encompasses the varied

15

means by which an individual might actively participate in the creation and distribution of child pornography." *Id.*

Defendant is correct in his contention that there was no direct evidence regarding his purpose in taking the photographs. However, a defendant's state of mind can be proved indirectly from the surrounding circumstances. Sixth Circuit Pattern Criminal Jury Instructions, § 2.08. "This includes things like what the defendant said, what the defendant did, how the defendant acted, and any other facts or circumstances in evidence that show what was in the defendant's mind." *Id.*

The sexually explicit conduct was not incidental to the images – it was the central theme of the pictures. There was no apparent purpose for the pictures other than to capture a visual depiction of that sexually explicit conduct. Moreover, the number of photographs, the sexually explicit poses, and the fact that the pictures were taken on three different days, permit a strong inference that some of the conduct occurred in order to make the photographs. *See Ortiz-Graulau*, 526 F.3d at 19 ("[T]he number of photographs, many of sexually explicit poses, permits a strong inference that some of the conduct occurred in order to make the photographs."). The Court has no difficulty inferring that Defendant acted with the purpose of producing a visual depiction of J.S. engaging in sexually explicit conduct.

Defendant contends that courts have considered whether photographs taken in order to "memorialize a relationship" can be deemed to meet the "for the purpose of" requirement. For example, in *United States v. Street*, 531 F.3d 703 (8th Cir. 2008), the Eighth Circuit

noted that evidence that the defendant and the minor were involved in a mutual, loving relationship was relevant to the defendant's attempt to refute the government's showing that the photographs were taken "for the purpose of" producing visual depictions of a minor engaged in sexually-explicit conduct. *Id.* at 708. In *Ortiz-Graulau*, 526 F.3d at 19-20, the First Circuit noted that despite the language of the statute, Congress might not have intended to make it criminal for a husband and wife to take intimate photographs of each other for their private use, and that some courts might find constitutional problems with the plain language of the statute based on marital or consenting-adult privacy issues. *Id.* at 19. In *United States v .Morales de Jesus*, 372 F.3d 6 (1st Cir. 2004), the court rejected the defendant's "further-the relationship" argument because the facts, including his active concealment that he was making a videotape, and his direction of her activities relative to the camera, did not support the defense. *Id.* at 21-22.

Even if memorializing an intimate relationship might, in some cases, refute the government's "for the purpose of" evidence, the burden is on the defendant to present evidence in support of this defense. Defendant has not shown that he and J.S. had the kind of intimate relationship that would refute the government's evidence that the photographs were taken for the purpose of producing images of a minor engaged in sexually explicit conduct. Although the evidence shows an on-going relationship between Defendant and J.S., the nature of that relationship is unclear. There is evidence that J.S. did chores for Defendant in return for pay, that he was "more like a son than anything else," and that while in Florida

they spent time naked in the hotel room and masturbating. (Ex. 10D.) This evidence is not sufficient to show the kind of relationship that would be subject to constitutional marital or consenting-adult privacy considerations. Moreover, the fact that most of the images were of J.S. alone tends to refute Defendant's argument that the photographs were taken to memorialize their intimate relationship.

4. Interstate Transport

The fourth element requires proof that the visual depiction was actually transported across state lines or in foreign commerce.

The government has clearly shown – from hotel records, the dates of the pictures on the EXIF, the comparison photos of the hotel room, and the scenery in the outdoor photos – that the pictures were taken in Florida. The pictures were found on a thumb drive in Defendant's house in Michigan. The pictures were necessarily transported from Florida to Michigan.

The Court concludes that the government has proved beyond a reasonable doubt that Defendant is guilty of sexual exploitation of a minor as charged in Counts 1, 2 and 3.

**B. Sexual Exploitation, Counts 4, 5**

Defendant is charged in Counts 4 and 5 with sexual exploitation of a minor in violation of § 2251(a). These two counts charge that on July 30, 2009, and on August 13, 2009, Defendant surreptitiously created a video of J.S. while he masturbated in front of a computer, and that he produced the video using a video camera and an Apple Mac Pro

18

desktop computer that were manufactured outside the State of Michigan.

Section 2251(a) provides in pertinent part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e) . . . if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer . . . .

18 U.S.C. § 2251(a).

In order for Defendant to be found guilty of sexual exploitation of a minor as charged in Counts 4 and 5, the government was required to prove each of the following elements beyond a reasonable doubt:

> (1) at the time alleged in the indictment, J.S. was under the age of 18 years;

> (2) Defendant knowingly used, persuaded, induced or enticed J.S. to engage in sexually explicit conduct;

> (3) Defendant acted with the purpose of producing a visual depiction of such conduct; and

> (4) the visual depiction was produced using materials that had been mailed, shipped or transported across state lines or in foreign commerce by any means, including by computer or cellular phone.

18 U.S.C. § 2251(a). *See also Eighth Circuit Model Jury Instructions*, § 6.18.2251(a).

1. <u>Under 18</u>

The videos were taken in Defendant's home office. The videos were stored on the HDD4 hard drive of Defendant's computer in the "EyeTV Archive" folder. The date and time when the videos were taken or when they were placed on the hard drive were included

19

in the file name of each video. (Ex. 11.) The videos were made on or before July 30, 2009, and August 13, 2009. At the time the videos were made, J.S. was 17 years of age.

2. Used

The videos captured J.S. masturbating. Accordingly, they depicted J.S. engaging in sexually explicit conduct. As the Court concluded in Part II(A) above, a defendant "uses" a minor for purposes of § 2251(a) if he photographs the minor engaging in sexually explicit conduct to create a visual depiction of such conduct. The Court finds that Defendant used J.S., a minor, for purposes of creating a video of J.S. engaging in sexually explicit conduct.

3. For the Purpose of Producing

The government did not produce direct evidence that Defendant was present or that Defendant operated the camera when the videos were taken. Nevertheless, the Court is satisfied that the evidence shows beyond a reasonable doubt that Defendant actively participated in the production of the videos of J.S. engaging in sexually explicit conduct. This finding is based on evidence that the videos were filmed in Defendant's home office; the videos were found on Defendant's computer; Defendant had knowledge that J.S. was masturbating in the office prior to the creation of the videos; Defendant had also expressed some interest in this behavior prior to the creation of the videos as he admitted checking the computer history to see what J.S. was looking at while masturbating; and four of the six surveillance videos found on Defendant's computer were of J.S. masturbating. Like *Ortiz-Graulau*, "[t]his is not the case of a security camera mechanically picking up a random act."

526 F.3d at 19. The Court finds that Defendant used J.S. for purposes creating a visual depiction of J.S. engaging in sexually explicit conduct by hiding a camera in the office in a manner that was designed to, and did, result in visual depictions of J.S. masturbating.

4. Interstate Nexus

The fourth element requires proof that the visual depiction was produced using materials that have been mailed, shipped ,or transported in interstate commerce. This element can be met by evidence that the materials used to create the videos were manufactured out of state. *United States v. Gann*, 160 F. App'x 466, 470 (6th Cir. 2005).

The government contends that because the videos were found on the hard drive of Defendant's computer, and because the parties have stipulated that the Mac computer and the hard drive were produced outside of the State of Michigan, it has met its burden of showing that the videos were "produced" using materials that had been transported across state lines. Defendant contends that because the camera that was used to make the videos was not produced in evidence at trial there is insufficient evidence to show that the visual depiction was "produced" using materials that have been transported in interstate commerce.

As noted previously, the term "produced" is defined in a broad and non-technical sense. *Fadl*, 498 F.3d at 867. In *Poulin* the court rejected the defendant's argument that "production" occurs only in a recording device. 631 F.3d at 22. As the *Poulin* court noted, "Congress did not intend so technical a definition of the term 'produced.'" *Id.* "Congress intended a broad ban on the production of child pornography and aimed to prohibit the varied

21

means by which an individual might actively create it." *Id.* at 23. "As such, the government did not need to establish at what point "production" occurred, nor produce in evidence a recording device recovered from the [cabin where the cameras and DVDs were found]." *Id.*

The parties have stipulated that the Mac computer and the hard drive were produced outside the State of Michigan. The Court is satisfied that the transfer of the images from the recording device to the computer where they can be saved and viewed is part and parcel of the creation of the child pornography. The computer and hard drive on which the videos were saved traveled through interstate commerce. Accordingly, the evidence was sufficient to establish that the visual depiction was produced using materials that had been transported across state lines.

The Court concludes that the government has proved beyond a reasonable doubt that Defendant is guilty of sexual exploitation of a minor as charged in Counts 4 and 5.

## C. Transportation of Images, Count 6

Defendant is charged in Count 6 with transportation of images of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(1). Section 2252(a)(1) provides that it is a crime for a person to:

(1) knowingly transport[] or ship[] using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mails, any visual depiction, if –
   (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
   (B) such visual depiction is of such conduct

18 U.S.C. § 2252(a)(1).

In order for Defendant to be found guilty of transportation of images of a minor engaged in sexually explicit conduct as charged in Count 6, the government was required to prove each of the following elements beyond a reasonable doubt:

(1)  That on or about March 10, 2009, the defendant knowingly transported a visual depiction;
(2)  That the visual depiction involved a minor engaged in sexually explicit conduct;
(3)  That the defendant knew that the visual depiction involved a minor engaged in sexually explicit conduct; and
(4)  That the defendant transported the visual depiction in or affecting interstate commerce.

*See Eleventh Circuit Pattern Jury Instructions*, § 75.1 (2010); *see also United States v. Chambers*, 441 F.3d 438, 449 (6th Cir. 2006) ("Under Section 2252(a)(1), the government must prove that: (1) the defendant knowingly transported or shipped, (2) in interstate or foreign commerce, (3) any visual depiction involving the use of a minor engaging in sexually explicit conduct.").

The images at issue in Count 6 are the 21 Florida pictures that are the subject of Counts 1, 2, and 3.  The Court has already determined, in Part II(A) above, that the images involved a minor engaged in sexually explicit conduct.  The Court also finds that Defendant knew J.S.'s age, and that because Defendant participated in the creation of the images, Defendant knew that the visual depictions involved a minor engaged in sexually explicit conduct.

With respect to the interstate nexus, Count 6 requires proof that Defendant knowingly transported the images across state lines.  Defendant contends that the mere fact that the

23

photographs taken in Florida were found in Defendant's office in Michigan is not proof that Defendant knowingly transported them.

The Court is not required to suspend reason. The Court can infer from the surrounding circumstances that Defendant knowingly transported the images from Florida to Michigan. The record reflects that numerous photographs were taken during the Florida trip, nude photos as well as more traditional tourist photos. The sexually explicit images were found on Defendant's thumb drive in his office in Michigan, and the "safe" pictures were found on the hard drive of Defendant's computer in his office in Michigan. The pictures did not accidentally show up in Michigan. The Court finds that Defendant knowingly transported the images from Florida to Michigan, and that he saved the "safe" pictures in a different place from where he saved the "sexually explicit" images.

The Court concludes that the government has proved beyond a reasonable doubt that Defendant is guilty of transportation of images of a minor engaged in sexually explicit conduct as charged in Count 6.

**D. Possession of Child Pornography, Count 7**

Count 7 charges Defendant with Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) This statute makes it a crime for a person to

> knowingly possess[] . . . any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography . . . that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means[.]

18 U.S.C. § 2252A(a)(5)(B).

In order for Defendant to be found guilty of possession of child pornography as charged in Count 7, the government was required to prove each of the following elements beyond a reasonable doubt:

> (1) On or about March 24, 2011, the defendant knowingly possessed images of child pornography;
> (2) the defendant knew that the visual depictions were of a minor engaging in sexually explicit conduct; and
> (3) that the visual depictions were produced using materials that had been shipped and transported in interstate or foreign commerce.

*Eighth Circuit Model Jury Instructions*, § 6.18.2252.

The government contends that this charge is supported by three categories of images: the 21 Florida images described in Counts 1, 2, and 3; the two videos described in Counts 4 and 5; and six additional images of unidentified naked minors that were found on Defendant's Mac Pro Tower hard drive 1.[4] (Ex. 13.) The government contends that the interstate nexus is based on the fact that the materials used to produce the images had traveled in interstate or foreign commerce. Images are "produced" for purposes of § 2252A(a)(5)(B) when computer equipment such as a hard drive is used to copy or download the images. *See United States v. Ramos*, 685 F.3d 120, 133 (2d Cir.), *cert. denied*, 133 S. Ct. 567 (2012); *United States v. Schene*, 543 F.3d 627, 638 (10th Cir. 2008); *United States v. Anderson*, 280 F.3d 1121, 1125 (7th Cir. 2002); *United States v. Guagliardo*, 278 F.3d 868, 871 (9th Cir. 2002).

---

[4]The Court sustained Defendant's objection to the government's attempt to introduce additional images that had not been identified in the indictment. (Dkt. No. 46, Tr. 144.)

For purposes of the requirement that the images be produced using materials that were transported in interstate commerce, a computerized image is "produced" when computer equipment, including hard drives, is used to copy or download the images. *See United States v. Angle*, 234 F.3d 326, 340-41 (7th Cir. 2000) (holding that images stored on zip disks and diskettes that had traveled in interstate commerce were "produced"); *United States v. Lacy*, 119 F.3d 742, 750 (9th Cir. 1997) (holding that copying child pornography using computer equipment that had traveled in interstate commerce satisfies the jurisdictional term "produced").

Defendant concedes that many of the Florida pictures and portions of the surveillance videos are child pornography, and that he clearly possessed child pornography as that term is statutorily defined. (Dkt. No. 48, Def. Br. at 30.) Defendant argues, however, that he should not be convicted based on the third category of additional images of unidentified minors found on Defendant's computer.

With respect to RCHCH01.jpg, the only one of the six images saved on the hard drive, this image was located in a collection of adult pornography on Defendant's computer. When this image was enlarged, it was evident that there was hair on the hands and knuckles of the subject identified as the "child." Because of the location of this image and the nature of the image, the Court agrees that the evidence does not show, beyond a reasonable doubt, that it qualifies as evidence of the knowing possession of an image of child pornography.

The remaining five of the six additional images listed in the indictment were located in the Internet cache of the Apple web browser, Safari. Agent Babcock testified that he was

unable to determine whether these particular images had been deliberately downloaded or ever actually viewed. (Tr. 127-28.) The Court has a reasonable doubt as to whether Defendant had knowledge of these images.

The Court concludes that the government proved beyond a reasonable doubt that Defendant possessed child pornography as charged in Count 7 with respect to the pictures and videos described in Counts 1-5. The Court finds beyond a reasonable doubt that on March 24, 2011, the defendant knowingly possessed these images of child pornography, that he knew that the images were of a minor engaging in sexually explicit conduct, and that he produced the images using materials that had been transported in interstate commerce by copying these images onto his computer and thumb drives.

## IV.

The Court finds that the government has proven beyond a reasonable doubt that Defendant Thomas L. Wright committed: (1) the offense of sexual exploitation of a child in violation of 18 U.S.C. § 2251 as charged in Counts 1-5; the offense of transportation of images of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2251 as charged in Count 6; and the offense of possession of child pornography in violation of 18 U.S.C. § 2252A as charged in Count 7. Defendant Wright is adjudged guilty of all of the offenses charged in the superseding indictment.

An order consistent with this opinion will be entered.

Dated: January 15, 2013                    /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE